Gene H. PETERS and Michelle Lee Peters, a minor, by her next friend, Gene H. Peters, Appellants,

v.

William Richard HENSHAW, Raymond Henshaw and Pamela Jean McAdow, Respondents.

No. WD 33047.

Missouri Court of Appeals, Western District.

Sept. 21, 1982.

James D. Boggs, Witt & Boggs, Platte City, for appellants.

Robert F. Deis, Platte City, for Henshaw. Walter R. Simpson, Sheridan, Sanders & Simpson, P.C., Kansas City, for McAdow.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Gene Peters filed a wrongful death suit on his own behalf and as next friend for his daughter Michelle for the death of Sharon, the wife and mother, against Pamela McAdow, who was driving the car in which Sharon was riding, and against William Henshaw, the driver of the car with which the McAdow car collided. The petition also contained a count on a theory of negligent entrustment against William Henshaw's father, Raymond. The court entered judgment in favor of Raymond Henshaw on a motion for summary judgment. The jury returned a verdict in favor of Pamela Jean McAdow, but against William Henshaw and assessed damages at $75,000.

The Peters have appealed from the judgment in favor of Raymond Henshaw and Pamela McAdow. The Peters contend the court erred in finding in favor of Raymond Henshaw because there was sufficient evidence to demonstrate negligent entrustment. As to the judgment in favor of McAdow, they contend error in rulings during final argument and in overruling a motion in limine to prohibit evidence of the remarriage of Gene Peters. Affirmed in part, reversed in part, and remanded.

Raymond Henshaw was the owner of a 1966 Dodge, driven by his son William, at the time of the accident on February 28, 1978. Raymond had acquired the Dodge in June, 1972, and one son had used it for a period of time with William beginning to

drive it in 1976. Although Raymond testified that he had sold the car to William, no transfer of title was ever accomplished.

On Raymond's motion to dismiss for failure to state a claim the court took up the separate count against Raymond for negligent entrustment prior to trial. Evidence was presented through the testimony of Raymond. For that reason the motion to dismiss is considered as a motion for summary judgment. Rule 55.27(a). Raymond stated that William worked for him in his service station in Leavenworth, Kansas. William had been married for over a year at the time of the accident, but had not actually lived at home for several years. Raymond said that he was aware that William had received three or four speeding tickets, but the dates of these tickets were not given.[1] Raymond also stated that he was aware that at some unspecified time William had had his drivers license revoked by the State of Kansas because of "a hit and run and a DWI." Raymond stated the hit and run and DWI did not occur while William was driving the 1966 Dodge, but he did know of these convictions. William had a valid drivers license at the time of the accident.

Peters contends that the evidence was sufficient to allow a finding that Raymond was negligent in entrusting the 1966 Dodge to William under the elements of that doctrine as set out in *Evans v. Allen Auto Rental and Truck Leasing, Inc.,* 555 S.W.2d 325, 326[1] (Mo. banc 1977). Peters relies on the first element listed:

(1) that the entrustee is incompetent by reason of age, inexperience, habitual recklessness or otherwise;

There is no contention that William was under age or inexperienced as a driver so the focus is on habitual recklessness. The meaning of habitual recklessness was discussed in *Lix v. Gastian,* 261 S.W.2d 497, 500[3–5] (Mo.App.1953) when the court stated:

But, before liability can be imposed in such a case it must be shown that the reckless conduct of the borrower was so constantly committed as to constitute a habit of negligence. *Guedon v. Rooney,* 160 Or. 621, 87 P.2d 209, 120 A.L.R. 1298; *Davis v. Shaw,* La.App., 142 So. 301; *Mayer v. Johnson,* Tex.Civ.App., 148 S.W.2d 454; *Ward v. Koors,* Ohio App., 33 N.E.2d 669. Absent such a showing, it cannot be said that the owner should have anticipated the likelihood of injury or dangers to others by so lending his car. It would be undesirable and unrealistic to hold otherwise. *Pittsburg Rys. Co. v. Thomas,* 3 Cir., 174 F. 591.

In *Guedon* the court quoted from *Pittsburg Rys. Co.* that:

a man perfectly competent . . . may occasionally be negligent, so that one or two specific acts of negligence do not prove incompetence. It must be either shown that the so-called negligent acts were the result of incompetence, or were of such a character and so constantly committed as to constitute a habit of negligence. [174 F. 595]

The *Davis* court at 142 So. at 306 held that the owner of an automobile, except for statutory grounds, is not responsible to third persons for the negligence of an otherwise competent person who he has permitted to use his automobile, even though the driver may have exceeded the speed limit on occasion or had been involved in an accident in which he had been negligent. The court further stated in *Davis* that even though the owner may have knowledge that a person had previously driven an automobile at an excessive speed, this is insufficient to constitute negligence under the negligent entrustment doctrine. In *Ward* at 33 N.E.2d at 673, the court held that a case of negligent entrustment could not be predicated entirely on one act of negligence occurring years before the entrustment.

*Evans* requires that the recklessness be habitual. As construed by *Lix* and the

---

1. The only information given was that the tickets were acquired while William was driving between Leavenworth and Manhattan while he attended Kansas State. At the time of the accident William was about 23 years old.

other cases discussed above proof of a single accident, even though accompanied by negligence, is not sufficient to establish habitual recklessness. Here the proof was that at some unknown time William had been convicted of failing to stop after an accident and driving while intoxicated. Whether these two offenses arose out of a single accident is not shown.

As to the speeding tickets, the court in *Davis* observed that even the most competent and skilled driver may, on occasion, exceed the speed limit. On the other hand, a substantial number of speeding convictions over a relatively short time may be sufficient. In *Tortora v. General Motors Corp.*, 373 Mich. 563, 130 N.W.2d 21 (1964) it was held that eleven speeding convictions and one reckless driving conviction in five years was sufficient.

■■ In this case Raymond insists the court properly granted him summary judgment. When he requested summary judgment, Raymond undertook the burden of showing by unassailable proof that there was no genuine issue of fact, and that he was entitled to judgment as a matter of law. *Pagan v. City of Kennett*, 427 S.W.2d 251, 253 (Mo.App.1968). Although there does not appear to be any dispute that William had received three or four speeding tickets and had been convicted of leaving the scene of an accident and driving under the influence of alcohol, there is nothing in the record to indicate when these offenses occurred. Under the requirement of *Lix* and the other cases discussed above, it becomes most important to determine when the offenses charged to William took place. If they were incurred over a span of years with considerable time between each offense, that would be one thing, but if the offenses were within a relatively short time and closely connected with the commencement of William's use, or after his use began, that would be another. In short, Raymond did not carry his burden of proof to show that he was entitled to judgment as a matter of law, because the evidence in this record cannot be said to demonstrate that William was not habitually reckless.

■■ The negligent entrustment theory is not defeated by Raymond's statement that he had sold the car to William. Raymond conceded no assignment of title to William had been made. It is the law of Kansas that a sale of a used car without assignment of a duly assigned certificate of title at the time possession of the car is given is ordinarily fraudulent and void. *Ellsworth v. Worthey*, 612 S.W.2d 396, 400[5, 6] (Mo.App.1981). Despite Raymond's testimony that he had sold the car to William, Raymond remained the owner of the car with the right to entrust its use to William. *Evans* at 555 S.W.2d at 325 quoting from *Bell v. Green*, 423 S.W.2d 724, 732 (Mo. banc 1968).

■ Turning to the appeal from the judgment in favor of McAdow, the jury was justified in finding that the accident was caused when William's car crossed the center line and collided with the McAdow car. During the concluding part of Peters' final argument, counsel told the jury that McAdow could have swerved onto the ten foot shoulder and avoided the accident. McAdow's attorney objected on the ground there was no submission in the instructions on the failure to swerve. The court sustained the objection. Peters now contends this was error.

In the first part of his final argument Peters' counsel had argued that McAdow had sufficient time to honk and to get off on the shoulder after she observed Henshaw's car close to the center line. No objection was made to that argument, thus the argument had already been made to the jury without objection. It is difficult to perceive any prejudice when the same argument had already been made to the jury. In a similar situation the court in *Hawkins v. Allen Cab Company*, 457 S.W.2d 940, 942[6, 7] (Mo.App.1970) noted the broad discretion vested in a trial court to rule on the propriety of jury argument. The court in *Allen* found no prejudice. This court finds no prejudice in this case.

Peters' next complaint is that the court improperly sustained an objection made by McAdow's counsel to an argument made by Henshaw's counsel. Henshaw's counsel ar-

gued without objection that McAdow could have done something to avoid the collision, but she didn't honk or turn the wheel. Later the same counsel argued that McAdow could have gone to the right or could have stopped. At that point McAdow's counsel objected on the ground the argument was beyond the submission in the instructions and the court sustained the objection.

■■ It is well settled that when a party fails to object to an allegedly erroneous argument at the time it is made, his claim of error is foreclosed from consideration. *Mueller v. Storbakken,* 583 S.W.2d 179, 186[6] (Mo. banc 1979). Peters is seeking to take advantage of an objection made by McAdow's counsel when he did not make any objection himself. The rule that requires a party to make an objection to preserve a claim or error has been applied when a party sought to predicate error on an objection made by another party. *Preston v. Union Pacific R.R. Co.,* 292 Mo. 442, 239 S.W. 1080, 1084[11, 12] (1922). *Appeal dismissed* 260 U.S. 753, 43 S.Ct. 14, 67 L.Ed. 496 (1922). Absent an objection by Peters, no error has been preserved for review.

Peters finally contends that the court erred when it overruled his motion in limine to prevent the other parties from informing the jury that he had remarried. The court overruled the motion prior to trial, but Peters' counsel told the jury panel during voir dire that Peters had remarried. Peters takes the position that revealing the very information to the jury which he had sought to suppress does not prevent him from contending on this appeal that the court erred in overruling the motion in limine.[2]

■ It is well settled in criminal cases that after the denial of a motion in limine, a timely objection at trial is required to preserve the point for appellate review. *State v. Hurst,* 612 S.W.2d 846, 856[35, 36] (Mo.App.1981). Although no Missouri case had been located which applies this same rule in civil cases, the same result has been reached in other states when the question has been presented. It is stated in 75 Am. Jur.2d *Trial* § 165 (1974) that "there ap-

pears to be general agreement among the cases that a denial of a motion in limine cannot in and of itself constitute reversible error, since the objectionable material has not yet reached the jury's ears, and may never reach the jury at all." The statement in American Jurisprudence is based on *State v. Garrett,* 183 N.W.2d 652 (Iowa 1971). The reasoning in *Garrett* was adopted in *Ory v. Libersky,* 40 Md.App. 151, 389 A.2d 922, 930 (1978). In *Ory,* a civil case, the court stated that the denial of a motion in limine cannot in and of itself constitute reversible error for the reason stated in *Garrett* that the objectionable material has not reached the jury's ears and may never be heard by the jury.

The same rule was adopted in Texas in *Hartford Accident and Indemnity Company v. McCardell,* 369 S.W.2d 331, 335[4, 5] (Tex. 1963). In *McCardell* the court held that if a motion in limine is overruled a judgment will not be reversed unless the questions or evidence were in fact asked, or offered, and if so, an objection at that time is necessary to preserve the right to complain on appeal.

The same rule applies in Iowa to civil cases as well as in criminal cases. In *Twyford v. Weber,* 220 N.W.2d 919, 924[7] (Iowa 1974) the court relied on *Garrett* in holding that when a motion in limine is denied it is necessary to object during trial when the challenged question or evidence appears.

This court has not located any case holding contrary to those cited above, and thus is persuaded that the rule which has been applied for years in criminal cases should be applied in civil cases. Application of that rule to this case results in Peters having failed to preserve any error for review in the overruling of the motion in limine. To preserve any error in this regard, Peters was required to await an attempt of his adversary to introduce the evidence of his remarriage and then to object at that time. However, Peters chose to reveal his remarriage himself, and thus the situation never arose in which he was required to object to an attempt by Henshaw and McAdow to convey this information to the jury. Since the overruling of the motion in limine can-

---

2. For a discussion of the motion in limine see

Annot., 63 A.L.R.3d 311 (1975).

**202**

not in and of itself be the basis of reversible error, Peters has not preserved any error for review on this point.

 Even though Peters has not preserved any error in the action the court took on his motion in limine, it is not amiss to observe that the action of the court was correct. This court observed in *Glick v. Allstate Insurance Company,* 435 S.W.2d 17, 23[4] (Mo.App.1968) that to withhold the fact of remarriage of a surviving spouse in a wrongful death case would be inconsistent with the integrity which the judicial process should maintain. There the court relied on *Dubil v. Labate,* 52 N.J. 255, 245 A.2d 177 (1968). The statement in *Glick* was followed by this court in *Salsberry v. Archibald Plumbing and Heating Co.,* 587 S.W.2d 907 (Mo.App.1979). *Glick* has most recently been followed in *Duebelbeis v. Dohack,* 615 S.W.2d 488, 491 (Mo.App.1981).

The judgment in favor of Raymond Henshaw is reversed and the cause of action is remanded for further proceedings. The judgment in favor of McAdow is affirmed.

All concur.