**STATE of Iowa, Appellee,**

v.

**Charles Patrick GARRETT, Appellant.**

**No. 54289.**

Supreme Court of Iowa.

Feb. 9, 1971.

Joe P. Crookham, Oskaloosa, for appellant.

Richard C. Turner, Atty. Gen., and Robert Spayde, Sp. Pros., for appellee.

BECKER, Justice.

Defendant was charged with the crime of arson, tried to a jury, found guilty, sentenced to 20 years incarceration in the Men's Reformatory and placed on parole. He appeals his conviction. We affirm.

Defendant does not challenge sufficiency of the evidence to sustain a verdict. Nevertheless we must review the evidence to some degree. At the time of the fire defendant Garrett was a student at Central College in Pella, Iowa. He lived with Will Krist, another student, in a farmhouse rented from Roy DeBruin, located about 5 miles east and 3 miles north of Pella. The men were asked to move and rented another house from Roy DeBruin's son, Ronald. This second house was about 2 miles south of the Roy DeBruin house. On June 12, 1969 Garrett and Krist made application at the Van Gorp Insurance Agency for $3000 household contents insurance on the newly rented structure. On June 19 Krist left for Chicago. On June 20 Garrett, with the help of Ronald Bethards, another student, hauled two trailer loads of personal property from the Roy DeBruin to the Ronald DeBruin house.

Daniel Clark, a 15 year old boy, testified he knew defendant Garrett and Krist and also Joe Snyder, operator of a service station where Daniel Clark worked. Clark said he was with defendant Garrett and Snyder during the evening of June 20, 1969. Snyder drove defendant Garrett to the Roy DeBruin house at which he lived. On the trip Clark testified he heard the two men discuss their intention to set fire to a house.

Clark further testified that after leaving defendant Garrett at the Roy DeBruin house, Snyder drove to the newly rented Ronald DeBruin house, went inside and started it afire. Clark accompanied Snyder into the house, saw him gather some kindling in the house and light it. The two then left and drove to Pella.

Clark testified he heard Snyder and Garrett discuss the insurance money the next morning. Garrett had insured the contents of the house for $3000. According to Clark the discussion was that William Krist was to get $1000, Garrett was to get $1000 and

Snyder was to get $600 because he owed $400 to a fraternity of which Garrett and Krist were members.

Clark said he did not participate in the discussion about burning the house and did not take part in the setting of the fire. However, he did accompany Snyder inside the house, saw what was happening, did not protest and did not try to stop the fire or get help.

By other witness the State introduced testimony to show the $3000 insurance policy for which Garrett and Krist applied was never issued; but after the fire Garrett and Krist made claim for loss of household property having an acquisition value of $5100. Among the contents listed on the claim was $250 worth of whiskey and wine. The insurance agent checked the scene of the fire but could not find bottles indicating a $250 liquor loss. He reported the matter to the fire marshall's office. After further investigation defendant was charged by county attorney's information.

I. Defendant's first assignment of error challenges the court's handling of a motion in limine and motion to suppress evidence filed on the morning of trial. The motion was divided into four parts. The first portion of the motion stated the 15 year old witness had given hearsay testimony at the preliminary hearing and demanded that he and the prosecutor be specially instructed to avoid hearsay testimony, that Clark be told not to detail conversations of others (where defendant was not present) and not to go into such matters without first obtaining permission of the court in the absence of the jury.

No evidence was offered to support this motion. Counsel orally stated to the court that the alleged hearsay testimony referred to had been given at preliminary hearing but referred to no specific area of testimony, only that it dealt with conversations.

■ The trial court observed that defense counsel could protect his record by proper and timely objection and overruled the motion. This action was proper.

We have recently had occasion to recognize the motion in limine as a useful tool to avoid reversible error. State v. Johnson, 183 N.W.2d 194, (Iowa 1971) (decided January 19, 1971).

Limitations on the motion are discusssed in Lewis v. Buena Vista Mutual Ins. Assoc., 183 N.W.2d 198, (Iowa 1971) (decided January 19, 1971) where we said:

"We deem this appeal an appropriate one in which to say that cases are coming to this court revealing questionable use of the motion in limine—questionable in the manner of its use or in its use at all. The motion is a drastic one, preventing a party as it does from presenting his evidence in the usual way. Its use should be exceptional rather than general. Trial counsel would be well advised to keep in mind the suggestions found in Sidney, Motion in Limine, Workshop Outlines at Ninety-Second Annual Meeting, Iowa State Bar Association, A1 at A8–A9 (1965). The motion should be used, if used at all, as a rifle and not as a shotgun, pointing out the objectionable material and showing why the material is inadmissible and prejudicial. Since no one knows exactly how the trial will proceed, trial courts would ordinarily be well advised to require an evidentiary hearing on the motion when its validity or invalidity is not manifest from the face of the motion."

It has been said granting or rejecting a motion in limine can never be reversible error. 5 Washburn Law Journal 232, 233. This court has not insisted on a subsequent record where the motion in limine *is granted* on hearing which is evidentiary in nature, the court is completely apprised of the factual situation and nothing occurs at trial to change the posture of the parties. Gustafson v. Iowa Power & Light Co., 183 N.W.2d 212, (Iowa 1971) (decided January 19, 1971). Cf. Sacramento and San Joaquin Drainage Dist. v. Reed, 215 Cal. App.2d 60, 29 Cal.Rptr. 847, 853 (1963).

But where the motion *is denied,* the complainant must base his complaint on the trial record. The reasons for dependence on the trial record where the motion is denied are given in Division II. We have examined the record with care. Both counsel and the court were alert to keep out objectional material. While neither the form of direct questioning on the one hand nor the form of objections on the other, were models of clarity, we are satisfied the trial court held the witness to recitations of conversations at which defendant was present and in which he participated. The motion achieved its purpose. No error occurred.

II. Defendant also moved to exclude all reference to a simultaneous investigation of defendant by the officers in connection with charges receiving stolen goods and possession of drugs. The court did not rule on this matter and defendant assigns such failure as prejudicial error. Under other circumstances we have said failure to rule on objections to evidence is not error unless complainant has insisted on a ruling. Thus complainant proceeds at his own risk. State v. Hephner, 161 N.W.2d 714, 717 (Iowa 1968) and authorities cited therein. Here defendant did try to get a ruling but failure to rule was not error for another reason.

■ Since the very purpose of the motion in limine is to receive an advance ruling on anticipated objectionable material, failure to rule constitutes a denial of the motion. All authorities appear to agree that a denial of a motion in limine (or failure to rule on the motion) cannot, in and of itself, constitute reversible error. It may be error but can not be reversible error. The reason is simple. The objectionable material has not yet reached the jury's ears. It may never reach the jury. For reasons of its own the opposition may elect not to offer objectionable material. Hartford Accident and Indemnity Co., v. McCardell, 369 S.W.2d 331 (Texas 1963).

It is only when the material is offered in the jury's presence that the harm or error, if any, has been done. Then of course, the movant, having made the motion in limine is in a much stronger position to claim error. Excuses of good faith, use of opening statements, inadvertence or prompt admonition to the jury are harder come by.

■ Here the evidence to which defendant objected was never offered. Nothing was said about an investigation of defendant for receiving stolen property or possession of drugs. Mention was made of the officer's attempt to obtain a search warrant but the charge under which the affidavit for search warrant was made was not mentioned. The search warrant incident is considered in the next division. The court's failure to rule on these two divisions of the motion in limine was not reversible error.

III. The fourth portion of the ruling dealt with the issuance of a search warrant, its execution and the property seized thereunder. The grounds for the motion were that the premises described were alleged to be owned by Ronald DeBruin whereas the house the officers wished to search (and apparently did search) was owned by Roy DeBruin. Further, the warrant was issued in connection with an investigation for possession of stolen property and possession of drugs.

Again, no evidence was offered at the hearing on the motion. The court first overruled the motion and then, after off-the-record conference, withdrew the ruling and reserved ruling until the matter could be presented at trial.

At trial the officer was asked what he did after he saw personal property in the DeBruin house that looked to him to be similar to the property claimed on the insurance claim form. He said he obtained a search warrant. The witness was asked what he did with the search warrant. Request for an examination out of presence of the jury was made and granted.

The hearing cast enough doubt on the validity of the search warrant for the court to suppress all evidence obtained under it. No further reference was made to the search warrant or evidence obtained by virtue of its execution.

Defendant's complaint as to failure to sustain the pretrial motion to suppress is without merit. He offered no evidence at the time to carry his burden of proof to show the warrant was invalidly issued or the evidence illegally obtained. Cf. State v. Gates, 260 Iowa 772, 150 N.W.2d 617 (1967). On preliminary voir dire examination defense counsel first raised the subject of a search warrant in the presence of the jury. At trial the evidence was suppressed. Under the record with the motion to suppress properly reserved and the subject of search warrant raised by defendant, the State had a right to take the witness down to where he testified he went to get a search warrant. After proper request for a hearing on the matter defendant was successful in his motion to suppress. We find no error.

IV. Defendant's next two points involve the instructions to the jury. At trial defense counsel stated they had no objections or exceptions to the instructions. No motion for new trial was filed. Where defendant neither objects to the instructions when submitted to him nor raises the question on motion for a new trial, he raises the issue for the first time on appeal.

■ This is not permissible. State v. Brown, 172 N.W.2d 152, 159 (1969). Nevertheless we have examined all of the instructions, taken as a whole, and find them fair and adequate as applied to the facts and law of this case.

■ V. Defense counsel's last complaint involves a comparison of the fees allowed to him vis-a-vis the fees paid the special prosecutor. We have heretofore ruled this matter is not relevant to the question of whether defendant received a fair trial; i. e. the question is not properly before us. Whatever may be the merits of the question of the allowance of attorney fees it must be brought up in a proper manner in an action involving the adequacy of fees; not in an action involving the guilt or innocence of defendant. State v. Schmidt, 259 Iowa 972, 982, 145 N.W.2d 631 (1966).

VI. We deem it advisable to make one further observation. Defendant as appellant failed to support his statement of facts by citations to the record as required by Supreme Court Rule, No. 18 and rule 344(a) (2), Rules of Civil Procedure, 58 I.C.A. This failure is understandable because many of the statements made are not found in the printed record but are found in the court reporter's transcript.

Neither the defense attorney nor the attorneys for the State bothered to compile a printed record adequate for this appeal. As a result it was necessary for this court to examine the entire transcript to determine, as is our duty under Iowa Code, 1971, § 793.18, what judgment the law demands. This has been done in order to satisfy ourselves that no reversible error occurred. While we do not commend the way this case was tried or appealed, we are satisfied there was no reversible error.—

Affirmed.

All Justices concur.